IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| CHRISTOPHER IRBY, § | |
| TDCJ # 01443091, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 3:19-cv-90 |
| § | |
| DR. MARCUS HINKLE, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Irby, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), has filed a civil-rights complaint (Dkt. 1) seeking relief under 42 U.S.C. § 1983. Irby sues Dr. Marcus Hinkle, a physician employed by the University of Texas Medical Branch ("UTMB"), alleging that Dr. Hinkle was deliberately indifferent to his medical needs after Irby suffered injuries to his face after falling off the top bunk of a bunk bed. Irby proceeds *pro se* and *in forma pauperis*.

Dr. Hinkle has moved to dismiss the complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. 9). Irby has filed a response (Dkt. 13), and the motion is ripe for decision. Having reviewed the motion, the briefing, the applicable law, and all matters of record, the court concludes that the motion to dismiss should be **granted in part** and **denied in part**.

## I. BACKGROUND

Irby alleges that on November 4, 2017, he fell from the top bunk of a bunk bed at the Darrington Unit (Dkt. 1, at 4).[1]  While being escorted to the infirmary, he was "in and out of consciousness" (*id.*).  Irby states that when he arrived at the infirmary, he suffered dizziness, swelling to the left side of his face, and a "damaged" left eye (*id.*).  The nurse working at the infirmary, Shanika L. Walker, LVN, proceeded to take Irby's vital signs. She then called the on-call physician, Dr. Marcus Hinkle, "to inform him of the nature and extent of [Irby]'s injuries and to request permission to send [Irby] to the emergency room of the local hospital" (*id.* at 4, 6).  Irby states that without examining him or asking him any questions, Dr. Hinkle told Walker to give him ibuprofen and send him back to his "living area" (*id.* at 6).

For the next two weeks, Irby states that he tried to "get medical treatment, pain medication, and to see the doctor" but was unsuccessful (*id.* at 6).  After sending several I-60 inmate requests to the medical department, an appointment was made for Irby to see a doctor (*id.*).

Irby was examined by Dr. Hinkle on November 16, 2017 (*id.*).  Irby states that in spite of Dr. Hinkle noticing swelling and "several deformities" to Irby's face, Dr. Hinkle told him that x-rays were not necessary because "even if there were broken or fractured bones" in Irby's face, "nothing could be done about it" (*id.*).  Irby states that he "pleaded"

---

[1]  Throughout this memorandum opinion, the court's citations to specific pages in the record refer to the pagination of docket entries on the court's electronic case-filing ("ECF") system.

with Dr. Hinkle for x-rays, and that Dr. Hinkle eventually "conceded" and ordered the x-rays (*id.*).

Irby met with Dr. Spears on December 7, 2017, to review the results of the x-rays (*id.*).[2] Irby states that Dr. Spears "discussed in length the damages and injuries" to his face, "as reflected in the x-rays taken" (*id.*). Dr. Spears scheduled an emergency appointment with an ENT specialist at UTMB Galveston (*id.*).

On December 12, 2017, Irby met with Dr. Nikunj Arun Rana at UTMB Galveston (*id.*). According to Irby, Dr. Rana said that the injuries to his face were "non-operative due to the timing of [the] injuries because [Irby] was not taken to the ED (Emergency Department) of the local hospital the night of the injury" (*id.*). Irby claims that the following notes were documented by Dr. Rana:

> Pt s/p left facila trauma 1 month ago after rolling out of bunk. Has left V2 parathesia. Told he had a nasal bone fracture and maxillary sinus wall FX. Will need formal imaging to evaluate. Counseled that given timing of injury, will likely be non-operative apart from FNR in 6 months.

(*Id.* at 7). Irby asserts that his injuries are on-going; in particular, he experiences numbness and disfiguration to the left side of his face (*id.*). He also states that he has been informed that his injuries may be permanent "due to the time lapse between the injury and his being sent to the specialist" (*id.*).

The court received Irby's lawsuit on March 1, 2019. Irby sues Dr. Hinkle, claiming that Dr. Hinkle failed to provide adequate and timely medical care for injuries Irby

---

[2]   Irby does not provide Dr. Spears's first name.

sustained after falling off a bunk bed in violation of the Eighth Amendment. Irby seeks an unspecified amount of punitive, nominal, and compensatory damages (*id.* at 4).

On December 2, 2019, Dr. Hinkle filed a motion to dismiss Irby's claim under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. 9). Dr. Hinkle argues that Irby's claim should be dismissed because he is entitled to qualified immunity and Eleventh Amendment immunity, and for failure to state a claim (*see id.*). Irby has filed a response to the motion to dismiss (Dkt. 13). In a section of his response titled "Clarification of the claims[,]" Irby alleges further facts in support of his claim (*see id.*). In particular, Irby states that:

- He was held in an unsafe cell and slept on an unsafe bunk;

- After he fell off the bunk bed, he had "blood pouring from his nose, with several fractured and broken bones in his face, and severe swelling of his face and head";

- Upon his arrival at the infirmary and after examination by Ms. Walker, Ms. Walker contacted Dr. Hinkle and gave him "her professional assessment that Irby should be transported to a hospital emergency room for immediate treatment";

- That Dr. Hinkle instructed Ms. Walker to send Irby back to his living area with only ibuprofen, in spite of Dr. Hinkle being aware that Irby "fell from the top bunk in his sleep landing on his face/head, that [he was in] and out of consciousness, that the left-side of Irby's face was visibly swollen and disfigured, and that Irby was bleeding profusely from his nose";

- That after Dr. Hinkle instructed Ms. Walker to send Irby back to his living area with only ibuprofen, she said "OH MY GOD! I can't believe he told me to only give you Ibuprofen. You need to go to the emergency room!"; and

- That the specialist he saw, Dr. Rana, was "aghast" at his "extensive injuries" and that "all involved opined that Irby should have been sent to a hospital emergency room immediately after the incident[.]"

(*Id.* at 2–3). In his response, Irby also requests the appointment of counsel (*id.* at 5).

4/ 12

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). The court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *In re Mirant Corp.*, 675 F.3d 530, 533 (5th Cir. 2012).

### B. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)). Federal rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on

5/ 12

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013).  Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true[,]" and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington.*, 563 F.3d at 147 (internal citations and quotation marks omitted).

The court's review under Rule 12(b)(6) is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)); *see Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (stating that on a Rule 12(b)(6) motion, documents attached to the briefing may be considered by the court if the documents are sufficiently referenced in the complaint and no party questions their authenticity) (citing 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).

  **C.** *Pro Se* **Pleadings**

In reviewing the pleadings and litigation history, the court is mindful of the fact that Irby is a TDCJ inmate proceeding *pro se*.  Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89,

94 (2007) (internal quotation marks and citation omitted).  Even under this lenient standard, a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*Twombly*, 550 U.S. at 555). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory.  *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) ("A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact.  A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.") (internal citations and quotation marks omitted).

### III.   DISCUSSION

#### A.   Dr. Hinkle's Rule 12(b)(1) Motion

At all times relevant to this suit, Dr. Hinkle was an employee of UTMB.  A claim against a TDCJ or UTMB official in his or her official capacity is a claim against TDCJ or UTMB, and thus a claim against the State of Texas.  *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008); *Horne v. Univ. of Tex. Med. Branch*, 516 F. App'x 377, 2013 WL 1152720, at *1 (5th Cir. 2013) (per curiam).  Because the Eleventh

Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting § 1983. *NiGen*, 804 F.3d at 394. Therefore, to the extent Irby brings any claims for money damages against Dr. Hinkle in his official capacity, the state is immune under the Eleventh Amendment. The claim therefore will be dismissed for lack of jurisdiction. This partial dismissal does not affect Irby's claim against Dr. Hinkle in his individual capacity.

### B. Dr. Hinkle's Rule 12(b)(6) Motion

Dr. Hinkle argues that Irby's Eighth Amendment claim should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and based upon qualified immunity for failure to establish a constitutional violation.

To state a claim under the Eighth Amendment, Irby must allege facts that would support an inference of "deliberate indifference to [his] serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "The mere delay of medical care can also constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter*, 467 F.3d at 463 (quoting *Mendoza v. Lynaugh*, 989 F.3d 191, 193 (5th Cir. 1993)).

As noted above, Dr. Hinkle has invoked qualified immunity, a defense that "protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law." *Crostley v. Lamar City, Tex.*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a defendant is entitled to qualified immunity, the court engages in a two-step inquiry. The court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231–34 (1991); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994). If so, the court must determine whether that right was clearly established so that a reasonable official in the circumstances and situation would have understood that his conduct violated that right. *Harlow*, 457 U.S. at 818; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Brewer*, 3 F.3d at 820. The plaintiff has the burden to show that qualified immunity should not apply. *Crostley*, 717 F.3d at 422. "If qualified immunity is raised in a motion to dismiss, 'it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, at *3 (5th Cir. 2008) (per curiam) (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

As it must, the court accepts Irby's allegations as true and views them in the light most favorable to him. Irby has alleged that Dr. Hinkle was aware of the nature and extent of Irby's injuries—which included, at a minimum, the fact that Irby fell from a bunk bed that resulted in him being "in and out of consciousness" and suffering from dizziness,

profuse bleeding from his nose, a "damaged" left eye, and swelling to his face. In spite of that awareness, Irby alleges Dr. Hinkle declined to examine Irby, failed to ask him any follow-up questions, denied Ms. Walker's request for permission to send Irby to the emergency room of the local hospital, and instead merely instructed Ms. Walker to give him ibuprofen and send him back to his living area. Irby has also alleged that his injuries, which include numbness and disfiguration to the left side of his face, are "on-going" and that they may be permanent. These allegations allow the court to draw the reasonable inference that Dr. Hinkle was deliberately indifferent to Irby's serious medical needs. Accordingly, Irby has alleged sufficient facts to state a plausible Eighth Amendment claim against Dr. Hinkle. Essentially for these same reasons, dismissal on qualified-immunity grounds is not warranted at this early stage of litigation. Irby has alleged that Dr. Hinkle knew the nature and extent of his injuries and that Dr. Hinkle failed to provide adequate medical care. Based on Irby's allegations, it is plausible that Dr. Hinkle acted objectively unreasonable in his treatment of Irby. Irby has asserted facts which, if true, are sufficient to overcome the qualified-immunity defense. *See Senu-Oke*, 283 F. App'x at *2–3.

Accordingly, on this record, dismissal under Rule 12(b)(6) is not warranted. Dr. Hinkle may raise this argument again at a later stage of the case, if appropriate.

### C. Request for Appointment of Counsel

In his response, Irby requests that counsel be appointed to represent him in this matter (Dkt. 13, at 5). There is no automatic constitutional right to appointment of counsel in civil-rights cases. *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007); *Ulmer v.*

*Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982).  A district court may appoint counsel to advance the proper administration of justice in exceptional circumstances and where an indigent litigant has colorable claims that will not receive a meaningful hearing without counsel.  *See* 28 U.S.C. § 1915(e)(1); *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015); *Ulmer*, 691 F.2d at 213.  When deciding whether to appoint counsel, the court considers the type and complexity of the case, whether the indigent litigant can adequately investigate and present his case, and the level of skill required to present the evidence.  *Baranowski*, 486 F.3d at 126.

Irby thus far has shown himself capable of self-representation and has filed appropriate responses and filings.  The court finds that this is not an exceptional case involving complex legal issues that would justify the appointment of counsel at this time.  As the case progresses, however, the court will revisit the issue on its own motion as necessary.

## IV.   CONCLUSION

For the reasons stated above the court **ORDERS** that Dr. Hinkle's motion to dismiss (Dkt. 9) is **GRANTED in part** and **DENIED in part**.  Irby's claim for monetary damages against Dr. Hinkle in his official capacity is **DISMISSED with prejudice**.  In all other respects, Dr. Hinkle's motion to dismiss is denied.  Irby's request for appointment of counsel contained in his response (Dkt. 13) is **DENIED**.

The court **ORDERS** Dr. Hinkle to file his motion for summary judgment within **90 days** from the date of this order. Any response from Irby must be filed within thirty days thereafter. Dr. Hinkle may file a reply within 14 days of the response.

The clerk will provide a copy of this order to the parties.

Signed on Galveston Island this  5th  day of  August , 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE